FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN - 1 2005

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT
WESTERN DIVISION

HELLEN S. NASH, )
 )
    Plaintiff )
 )
VS. ) NO. 4-05-CV-0845 GH
 )
JEFFREY A. HALL, M.D., )
 )
    Defendant )
 )

This case assigned to District Judge Howard
and to Magistrate Judge Ray

## COMPLAINT

Comes Hellen S. Nash, Plaintiff herein, and, for her claims against Jeffrey A. Hall, M.D., Defendant herein, states:

1. Plaintiff is a citizen of the State of Arkansas. Defendant is a citizen of the State of Arizona. The amount in controversy herein exceeds $75,000.00 exclusive of costs, interest and disbursements. Jurisdiction is based upon diversity of citizenship of the parties and amount in controversy, pursuant to 28 U.S.C. § 1332(a)(1).

2. A substantial part of the events or omissions giving rise to the claims asserted herein occurred within the Eastern District of Arkansas and therefore venue in this court is conferred by 28 U.S.C. § 1391(a)(2).

3. The claims asserted herein were previously brought in an action timely commenced in the Circuit Court of Randolph County, Arkansas, Case No. CV-2003-44, which case was dismissed without prejudice by order entered on the 24th day of May, 2005. This suit is timely commenced under the provisions of Ark. Code Ann. § 16-56-126.

4. Defendant was, at all times relevant herein, a medical doctor licensed to practice medicine by the State of Arkansas and who was, at the time of the occurrence described herein, engaged in the practice of general surgery.

5. On January 17, 2002, Plaintiff was seen by Dr. Roger Troxel, her family physician, with a history of change in bowel habits and bloody stools. Dr. Troxel referred her to Defendant for the purpose of a consult as to whether a colonoscopy procedure appeared to be warranted. She was subsequently seen by Defendant who recommended a colonoscopy and, on February 1, 2002, she was admitted to Randolph County Medical Center (RCMC) as an outpatient for the purpose of undergoing that procedure, which was performed on that date.

6. Immediately following the colonoscopy procedure and while Plaintiff was under the influence of sedatives administered to her in connection with that procedure, Defendant advised her that he had found a mass in her colon which no doubt was cancerous and that she needed surgery as soon as possible. The colonoscopy was done on Friday, and Defendant suggested that she undergo surgery the following Monday morning. Defendant conveyed to Plaintiff the sense that this surgery was urgent and that she should undergo it as soon as possible, that he was experienced in doing these procedures, and that he was comfortable that he could successfully surgically remove the cancer from her body. Defendant did not advise Plaintiff of any treatment options or that there were physicians who specialized in surgery on cancer patients. Defendant did not advise Plaintiff that the hospital where he proposed to do the surgery, RCMC, did not have in-house pathology services and therefore he would not be able to confirm, by pathological examination, before he completed the surgery, that he in fact had removed all of the tissue containing the malignant cells. Based upon the recommendations and assurances given by him,

Plaintiff, while still under the effect of the sedation, consented to allowing Defendant to perform surgery the following Monday, February 4, 2002.

7. On February 4, 2002, Plaintiff was admitted to RCMC by Defendant, following which admission he performed the surgical procedure on her which involved a resection of the portion of her bowel which contained the cancerous growth, the location of which was in the proximal portion of the rectum. The surgery was performed by removing a segment of the rectum following which the ends were reconnected by an anastomosis. Defendant did not open the portion of the bowel removed in order to determine, by gross examination, whether the segment of bowel that he removed had margins of apparently cancer-free tissue on either side of the cancerous lesion. If Defendant had, during the course of surgery, opened the specimen of bowel, he would have determined that he had failed to obtain clean tissue and that a portion of the cancerous growth remained within Plaintiff's rectum. Following completion of the surgery, the portion of the bowel removed by Defendant was sent to a laboratory for pathology, which laboratory determined that the specimen was an adenocarcinoma, and which study further revealed that Defendant had failed to obtain margins of healthy tissue, as a consequence of which cancerous cells remained within the tissue of her rectum as well as in her abdomen due to spillage of cells as a consequence of Defendant's cutting through the cancerous growth. Plaintiff was discharged from RCMC on February 11, 2002, at which time she was advised by Defendant to see a medical oncologist for recommendations for follow-up treatment.

8. On February 25, 2002, Plaintiff was seen by Dr. Carroll Scroggin who advised Plaintiff that she was at risk for a recurrence of cancer at the site of the surgery done by Defendant. Dr. Scroggin discussed treatment options with her and advised that she be seen by a radiation oncologist. On Mach 2, 2002, she was seen by Dr.

3

Loverd Peacock, a radiation oncologist, who recommended that she have another surgery on her colon, at the site of the surgery performed by Defendant, to be followed by chemotherapy and radiation therapy. Thereafter Plaintiff elected to consult with physicians at the Mayo Clinic.

9. On April 9, 2002, Plaintiff was seen at the Mayo Clinic. After appropriate evaluation, examination and testing, it was recommended by the physician there that Plaintiff undergo a course of radiation and chemotherapy to be followed by a revision of the surgery performed by Defendant. Pursuant to his recommendations, Plaintiff commenced a course of radiation therapy at the Mayo Clinic on April 30, 2002.

10. On July 9, 2002, Plaintiff was admitted to a hospital affiliated with the Mayo Clinic for removal of portions of the rectum containing the cancer which Hall had failed to remove at the time of his surgery on February 4, 2002. Because this was a revision of previous surgery in the same area, it was necessary that an ileostomy be established.

11. In December of 2002, Plaintiff was readmitted to the hospital affiliated with the Mayo Clinic for a surgical procedure to reverse the ileostomy, which was successfully reversed.

12. In March of 2003, Plaintiff returned to the Mayo Clinic for a follow-up examination. The examination and testing done during that visit, revealed that Plaintiff suffered a local recurrence of the rectal cancer which was inoperable and incurable and it was recommended that Plaintiff undergo chemotherapy for this inoperable locally recurrent cancer, which treatment Plaintiff received.

13. The recurrent cancer has caused an obstruction of Plaintiff's ureters as a consequence of which Plaintiff has undergone numerous surgical procedures for the implantation of stents in her ureters. Plaintiff has recently undergone surgery at the

Mayo Clinic, or at a hospital with which it is affiliated, for blockage of her kidney, at which time a tube was surgically installed in her kidney allowing direct drainage to the outside, which tube is still in place.

14. Plaintiff has, as a direct result of Defendant's surgery, and the consequences thereof, undergone numerous medical and surgical procedures for which she has incurred a great deal of medical expenses. Prior to the local recurrence of her rectal cancer, Plaintiff sustained the loss of working time in connection with the July 9, 2002 revision of Defendant's surgery, and in connection with seeking medical treatment in connection therewith as well as loss of working time due to the revision of the ileostomy in December of 2002. Because of her current rectal cancer, Plaintiff is no longer able to continue her employment and, since June 1, 2003, has been totally and permanently disabled as a direct result of the recurrent cancer. As a consequence, Plaintiff has sustained a loss of working time in the past and permanent impairment of future earning capacity. The recurrent cancer and all consequences thereof were caused by incomplete and inadequate surgery performed by Defendant on February 4, 2002.

15. As a direct and proximate result of Defendant's negligence, and failure to obtain informed consent, Plaintiff has sustained and will in the future sustain the following elements of damage:

    (a) Past and future pain, suffering and mental anguish;

    (b) Past and future hospital, surgical and other medical expenses;

    (c) Permanent injury;

    (d) Loss of working time in the past;

5

(e) Permanent impairment of future earning capacity;

16. Plaintiff has, by reason of the injuries and damages herein described, sustained damages in excess of the minimum amount required for jurisdiction of this court in a diversity of citizenship suit.

## COUNT I

17. Plaintiff incorporates herein, as a part of Count I, the foregoing allegations of paragraphs 1 thru 16 by reference thereto.

18. Defendant, at the time of the February 4, 2002 surgery on Plaintiff, failed to possess and exercise that degree of skill, care and learning ordinarily possessed and exercised by surgeons performing surgery for the removal of colon cancers in Pocahontas, Arkansas, or similar communities, which failure on the part of Defendant constitutes negligence, which negligence was a proximate cause of Plaintiff's injuries and damages as herein described. This negligence consists of, but is not limited to, the following acts and omissions:

(a) Failure to carefully examine the margin remaining after surgical incision of the adenocarcinoma;

(b) Failure to accurately locate the anatomical position of the adenocarcinoma before commencing surgery;

(c) Failure to examine the removed tissue in the operating room so as to determine whether there were margins of clear tissue around the excised adenocarcinoma;

(d) Transecting the adenocarcinoma during the course of the surgery allowing the spillage of malignant cells into the body;

(e)  Performing an incomplete surgical removal of the adenocarcinoma.

## COUNT II

19. Plaintiff incorporates herein as a part of Count II, by reference thereto, the foregoing allegations of paragraphs 1 thru 16.

20. Defendant failed to supply adequate information to Plaintiff to obtain an informed consent to his performing surgery on her and further provided information to Plaintiff, in connection with obtaining her consent, at a time when she was under the influence of sedatives and therefore not capable of fully and completely comprehending and evaluating the information given to her prior to her consenting to allowing Defendant to perform surgery. As a consequence of the circumstances under which the information was given, and as a consequence of the information which was not given, Defendant did not give Plaintiff adequate information to allow a reasoned and intelligent decision whether to undergo surgery by Defendant.

21. Plaintiff's injuries and all damages described herein were proximately caused by Defendant's failure to obtain Plaintiff's informed consent to allow him to perform surgery on her.

WHEREFORE, Hellen S. Nash, Plaintiff herein, demands judgment from and against Jeffrey A. Hall, M.D., Defendant herein, for her damages as may be assessed by the jury, which damages exceed the minimum amount required for jurisdiction of this court in diversity of citizenship suits; and Plaintiff further demands recovery of her costs herein.

HELLEN S. NASH

Plaintiff

7

BY: H. DAVID BLAIR       #65004
Attorney at Law
P. O. Box 2135
Batesville, Arkansas 72503
870-793-8350

-and-

STEPHEN R. BIGGER       #73009
Attorney at Law
202 West Pyburn Street
Pocahontas, Arkansas  72455
870-892-3000

By: *(signature)*
H. David Blair

## DEMAND FOR JURY TRIAL

Comes Hellen S. Nash, Plaintiff herein, and, pursuant to Rule 38 of the Federal Rules of Civil Procedure, demands right of trial by jury as to all issues so triable.

HELLEN S. NASH

Plaintiff

By: *(signature)*
H. David Blair